Ronemus & Vilensky, LLP
112 Madison Avenue
New York, NY 10016
(212) 779-7070

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSEPH WASHINGTON and MERCEDES
WASHINGTON

                      Plaintiffs,

           -against-

THE UNITED STATES OF AMERICA *et. al.*,

                     Defendants.
-----------------------------------------------------------X

17 Civ. 2320
(LTS) (JLC)

**DECLARATION**

I, Lawrence H. Singer, declare as follows:

1. That I am a partner at Ronemus & Vilensky, LLP (R&V) the attorney for the plaintiff, Joseph Washington and Mercedes Washington, in the above-captioned action. R&V is based in Manhattan and represents plaintiffs in personal injury lawsuits.

2. I have been chiefly responsible for the litigation of this matter on behalf of the plaintiff.

3. I make this declaration pursuant to CPLR § 1208(b) and Local Civil Rule 83.2 in support of the petition to settle and compromise this lawsuit against the defendant in the total sum of $350,000.00.

4. I make these statement based upon my own personal knowledge and would testify in the same manner if called as a witness at trial.

5. The underlying lawsuit involves allegations of negligence. This lawsuit was filed

under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-80 as well as violations of the Public Health law of the State of New York and common law negligence against the private defendants. Plaintiff alleges that the defendants, through their agents, failed to properly monitor properly prevent, diagnose and treat bedsores that developed on the plaintiff's sacrum which required multiple surgeries and scaring. Specifically, it was alleged, that the nursing staff at the defendant institutions failed to properly assess the plaintiff's skin; failed to properly turn and position the plaintiff for the purpose of relieving pressure on the skin; failed to properly treat the skin breakdown. Additionally, it was alleged that the defendants failed to culture the wounds which delayed the proper diagnose and treatment of infections that led to gangrene.

6.      On or about June 6, 2016 my office was first consulted by Joseph and Mercedes Washington regarding the possibility of pursuing a lawsuit on their behalf. We conducted a full intake of the case, including Mr. Washington's medical history and the facts surrounding the extensive medical treatment he received. We discussed with Ms. Washington the process of proceeding with a negligence lawsuit, the need for investigation, the expenses involved and the legal fee. We explained that the legal fee would be different for the claims against the United States than the claims against the private defendants. Specifically, we explained that our fee for claims brought against the United States pursuant to the Federal Tort Claims Act would be 25% of the recovery. Additionally, we explained that the attorney fees for the claims against the defendants would sound in negligence and malpractice and that each claim would be subject to a different fee structure of the gross settlement proceeds. We further explained that our firm would advance the disbursements necessary for the prosecution of this litigation and that we would be reimbursed at the conclusion of the case from the settlement proceeds.

7. This office then conducted an extensive investigation surrounding the circumstances of the incident and the injuries sustained by Joseph Washington. Specifically, this office obtained the plaintiff's medical records from the Manhattan VA; Brooklyn VA; NY Community Hospital; Ditmas Park Rehab and Hopkins Center for Rehabilitation and Healthcare. I reviewed well over a thousand pages of medical records. Upon completion of our initial review and research I determined that we needed to consult with an expert in nursing care in order to review the various medical records for negligence. Initially, I consulted with Janet Robol, RN in order to determine if this case was meritorious. Prior to meeting with that expert and others, I digested the all of the medical records. I personally met with the expert to discuss her findings.

8. On June 23, 2016 R&V filed an SF-95 form with the United States of America. Following the filing of our administrative claim R&V provided numerous medical records and other documents to the office of regional counsel. Plaintiff's administrative claim was denied on January 19, 2017.

9. Accordingly, R&V prepared a summons and complaint and an action was commenced against the defendants on March 31, 2017 (ECF Doc #3). Answers from the various defendants were received and an initial discovery conference was held on September 28, 2017. I prepared and served plaintiff's Rule 26 disclosure. I also reviewed the defendants' Rule 26 disclosures. Following the initial conference I prepared and served various demands upon the defendant and reviewed all of defendant's discovery responses and demands.

10. R&V prepared for and defended the deposition of the plaintiff. Additionally, we prepared for and conducted the depositions of the following witnesses produced by the various defendants: Maureen Sanphy, RN; Harold Sauthoff, MD; Edward Stolyar, MD and Rosemary Baler, RN. I also deposed a non-party witness, Dr. York S. Chan. I consulted with plaintiff's

expert on numerous occasions in order to prepare for the defendant depositions. While I was always familiar with the file I routinely would review the file, including prior memos, digests and medical records particularly before all depositions.

11.     During the course of discovery it became increasingly clear that plaintiff Joseph Washington could not competently participate in the prosecution of this lawsuit. Accordingly, my office prepared a motion to have Mercedes Washington appointed guardian ad litem. This motion was granted without any opposition from the defendants by an Order dated January 31, 2018 (Docket #75).

12.     Once all depositions were complete, counsel for all parties appeared for a settlement conference before Magistrate Judge James L. Cott on September 13, 2018. The conference resulted in the proposed settlement of $350,000.00, subject to the resolution of outstanding liens held by certain entities. During the settlement conference R&V advised the Court that a Medicaid lien on behalf the plaintiff needed to be resolved. To that end, I made every effort to determine the amount of the lien, including the service of subpoena on the New York City Department of Social Services. Ultimately, I was able to determine the amount of the lien and successfully negotiated a significant reduction. I personally negotiated the lien with Amy Wheeler, Esq. of the HRA Division of Liens and Recovery and they have agreed to accept $20,000.00 in full settlement of their lien. See attached exhibit "A". R&V has spent hundreds of hours working on this file with no guarantee of any legal fee or reimbursement of our expenses as this matter was taken on a contingency fee basis.

13. I have discussed all settlement offers with Mercedes Washington, the spouse and guardian ad litem of the plaintiff. She agrees to accept the final offer in the amount of $350,000.00. I have recommended that this offer be accepted and that this Petition be granted in view of the fact that this settlement represents fair and reasonable compensation for the injuries sustained. This settlement is strongly recommended by me given the likelihood that plaintiff might lose at the time of trial or be awarded an amount less than the proposed settlement.

14. Defendants would no doubt present credible evidence from their own experts stating that the decubitus ulcers "bedsores" were unavoidable given the debilitated state of Mr. Washington and that the care received by the plaintiff was within accepted standards of care. Additionally, defendants would argue that the plaintiff presented to the Brooklyn VA in an already comprised state having sustained a stroke with associated paralysis. Defendants would argue that since the plaintiff was confined to a bed he did not have the ability to effectively communicate. Furthermore, defendants would argue that the plaintiff's pain and suffering is limited on account of the various medical conditions and mental deficiencies he was suffering from prior to any alleged negligence. Finally, defendants would argue any potential economic damages are similarly limited on account of the various medical conditions he was suffering from prior to any alleged negligence. Accordingly, the proposed settlement is strongly preferred to the inherent uncertainty of a trial.

15. Except as set forth herein, there are no liens, claims, assignments or encumbrances of any kind against the plaintiff, petitioner or the proceeds of the within settlement. There are no outstanding hospital or medical bills and, there are no liabilities to any taxing authority for income or estate taxes.

16. That there was a Medicaid lien in the amount of $178,668.24 that I successfully

negotiated down to $20,000.00. In addition to the Medicaid lien, the Mail Handlers Benefit Plan has a lien in the amount of $787.00. See exhibit "B". It is respectfully requested that these liens be approved and paid from the settlement fund.

15.     The attorney's fees on behalf of the plaintiff's cause of action are subject to the discretion of the Court, but I respectfully requests that R&V be awarded $113,883.33, as and for the legal fee and $10,846.33 as and for disbursements, in the total amount of $124,679.66. This office spent many, many hours preparing pleadings, responses to demands, expert responses, expert meetings, depositions, and the like. I spent two days preparing for the settlement conference with this Court. We obtained an excellent result and in addition, negotiated a significant reduction in the Medicaid lien. This Court specifically stated that my office did not have to submit as an exhibit a document reflecting each hour that my office spent prosecuting this matter but as the Court can see my office spent hundreds of hours in furtherance of the case. My office has clearly earned our requested attorneys fees. Attached hereto as Exhibit "C" is an itemized list of all disbursements. All disbursements were necessary to the successful resolution of this matter.

16.     That the defendants will pay a total of $350,000.00 in the following manner:

(a) Defendant United States of America is paying $ 30,000.00 as follows:

$22,500.00 Mercedes Washington, as guardian litem of Joseph Washington;

$7,500.00 to Ronemus & Vilensky, LLP, as attorney's fee; and

(b) Defendant Ditmas is paying $285,000.00 as follows:

$158,366.67 to Mercedes Washington, as guardian litem of Joseph Washington;

$95,000.00 to Ronemus & Vilensky, LLP, as attorney's fee;

$10,846.33 to Ronemus & Vilensky, LLP as and for reimbursement of disbursements;

$20,000.00 to NYC Department of Social Services as and for repayment of its lien for Medicaid benefits on behalf of plaintiff;

$787.00 to Mail Handlers Benefit Plan as and for its lien on behalf of plaintiff; and

(c) Defendant NY Community is paying $10,000.00 as follows:

$7,000.00 to Mercedes Washington, as guardian litem of Joseph Washington;

$3,000.00 to Ronemus & Vilensky, LLP, as attorney's fee; and

(d) Defendant Hopkins is paying $25,000.00 as follows:

$16,666.67 to Mercedes Washington, as guardian litem of Joseph Washington;

$8,333.33 to Ronemus & Vilensky, LLP, as attorney's fee.

17. The requested legal fee for the claims brought against the United States of America amount to 25% of the settlement against the United States of America. Additionally, the attorney fees for the claims against defendants Ditmas and Hopkins amount to 33 and 1/3% of the settlement against those defendants. The attorneys fees for the claims against NY Community Hospital is 30% pursuant the sliding scale fee set by the State of New York.

18. I have no interest conflicting with those of the plaintiffs herein and have not become concerned with this application or its subject matter, directly or indirectly, and I am not to receive any compensation from the defendants, or their representatives, directly or indirectly, other than the legal fee and disbursements as directed by the Court herein.

19. That no previous application for the relief sought herein has been made to this or any other Court.

20. It is respectfully requested that this Court enter an Order approving the proposed settlement in the total amount of $350,000.00; award attorney's fees in the amount of $113,883.33 and reimbursement of disbursements in the amount of $10,846.33. After

subtracting attorneys fees and disbursements and re-payment of liens, the plaintiff will receive the sum of $204,533.34.

21.  I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: February 13, 2019
 New York, NY

_____
Lawrence H. Singer